**Danny E. TRUJILLO, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 87–234.

Supreme Court of Wyoming.

March 10, 1988.

Robert J. Pickett of Pickett & McKinney, Rock Springs, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Michele J. Neves, Student Intern, Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

BROWN, Chief Justice.

A jury found appellant Danny Trujillo guilty of aggravated assault.[1] He raises two issues on appeal:

I

"Whether the trial court erred in allowing the testimony of Rick Hawkins and of Roxanne Korogi indicating that the Defendant had had a prior instance of assault; and whether Wyoming Rules of Evidence 403 and 404(b) prohibits such testimony.

II

"Whether the Trial Court erred in denying Defendant's Motion for Acquittal for Lack of Insufficient [sic] Evidence; and whether there was insufficient [sic] evidence to go to the jury, or to sustain the guilty verdict."

We affirm.

Around 10:00 p.m. on July 17, 1986, appellant and Mike Cain entered Killpepper's Lounge in Rock Springs, Wyoming. Appellant stopped at the door for a moment to converse with Albert Sarcletti, a bouncer. During that conversation he turned to another bouncer named Anthony Knezovich, who was seated a few feet away on a barstool. Appellant told Knezovich, "Do you want a piece of my ass or do you want to leave it lay?" Knezovich turned his head away from appellant to talk with the restaurant receptionist and moments later was punched just below the ear. Appellant had walked quickly up to Knezovich after his statement and given him a blind left jab to the head. The punch dislodged Knezovich from his stool and his head recoiled into the cash register and a desk. He grabbed appellant in an effort to tie up his hands, and momentum propelled the two men towards the entrance to the restaurant. After a short wrestling match, Sarcletti and another bar patron separated the two men. Appellant attempted another swing at Knezovich at this time, but that punch only grazed him. Sarcletti told appellant to leave, and appellant obliged. Knezovich, having regained his equilibrium, got up and followed. About that time, the police arrived.

When the police pulled up, Knezovich pointed at appellant and told the police to arrest him for assault. Appellant observed this gesture and promptly began running in a northerly direction, away from the police. The police ran after him, but appellant made good use of his head start and superior footspeed and eluded his pursuers. The police quit the chase and headed back to Killpepper's. A short distance from the bar they found Knezovich and he told them what had happened. He also told them that he thought his jaw was broken. After the conversation, Knezovich got a ride to the hospital with a friend. Later that evening, appellant turned himself over to the police.

After x-rays and examination, Knezovich's suspicions of a broken jaw were confirmed. He was diagnosed as having two fractures of the jawbone. In the ensuing weeks, a Dr. Thomas Spicer performed two surgeries on him to correct his bite and insure that the joint healed properly.

Meanwhile, appellant had been booked for aggravated assault. An information was filed on November 25, 1986, and an arraignment took place the same day. Appellant pled not guilty, and a jury trial was set for May 12, 1987.

In appellant's opening and closing statements at trial, defense counsel acknowledged that his client had broken Knezovich's jaw with his first punch. During the trial, appellant called Albert Sarcletti as a

---

1. Section 6-2-502, W.S.1977 (June 1983 Replacement), provides in part:
   "(a) A person is guilty of aggravated assault and battery if he:

   "(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

defense witness, and during direct examination Sarcletti referred to appellant as a "boxer." The prosecution referenced this testimony in its closing argument. Defense counsel also closed by mentioning that appellant was a good athlete and a trained boxer with an outstanding career ahead of him. The defense countered the prosecution's arguments for an aggravated assault conviction, however, by arguing that appellant's single punch to the victim's jaw should result in acquittal based on self-defense or a conviction of simple assault and battery only. At the close of the state's case, appellant also moved for judgment of acquittal under Rule 30, Wyoming Rules of Criminal Procedure. The motion was denied. After closing arguments, the jury considered all the evidence and returned a guilty verdict on the aggravated assault charge.

After a subsequent hearing, the trial court sentenced appellant to a jail term of two to ten years in the State Penitentiary. The jail term was suspended in lieu of two to ten years of probation, a fine of $2,000, a $50 payment to the Victim's Compensation Fund and restitution. This appeal followed.

### I

Appellant's first issue is a challenge to the admissibility of certain testimony from three different state witnesses.

The first two challenged excerpts of testimony pertained to an incident that occurred on July 17, 1986, at another Rock Springs bar called Poor Roger's, about twenty minutes before appellant punched Knezovich. Rock Springs Police Officer Rick Hawkins was allowed to testify about the observations he made when responding to the Poor Roger's incident. Hawkins testified that there had been a fight in the bar, and a patron named John Swanson received head and jaw injuries from that fight. Hawkins also testified that, after he left Poor Roger's, he found appellant in a car about a block from Poor Roger's and told him that Swanson would not press charges against him for the fight but that appellant should go home. Hawkins said appellant replied that he would do that, and Hawkins then went back to patrol. The state also called Roxanne Korogi, the bartender at Poor Roger's on the night of July 17, 1986. Ms. Korogi testified as to her eyewitness account of the altercation between appellant and John Swanson.

■ Defense counsel's objections to Hawkins' testimony was that it should be excluded as inadmissible evidence of prior bad acts and as irrelevant. Ms. Korogi's testimony was objected to on similar theories.

This issue involves application of Rules 401, 402, 403 and 404(b), Wyoming Rules of Evidence.[2] These rules are applied keeping in mind that the trial court has discretion to admit or exclude evidence. *Coleman v. State*, Wyo., 741 P.2d 99, 103 (1987). We will approve " * * * the legitimate use of evidence of prior bad acts when offered for a permissible purpose. * * * " Id. at 102. See also *Brown v. State*, Wyo., 736 P.2d 1110, 1112–1114 (1987).

2. These rules are identical to their federal counterparts. Rule 401, Wyoming Rules of Evidence, provides:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Rule 402, W.R.E., provides:

"All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible."

Rule 403, W.R.E., provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Rule 404(b), W.R.E., provides:

"(b) Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

This court adheres to a five factor test when reviewing this issue. The five factors we look for are that:

"(1) Proof of the other similar crimes must be plain, clear and convincing.

"(2) The other crimes must not be too remote in time from the charged offense.

"(3) The evidence of the other crimes must be introduced for a purpose sanctioned by Rule 404(b) of the Federal Rules of Evidence.

"(4) The element of the charged offense that the evidence of other crimes is introduced to prove must be a material issue in the case.

"(5) There must be a substantial need for the probative value of the evidence of the other crimes." *United States v. Myers*, 550 F.2d 1036, 1044–1045 (5th Cir. 1977).

Adopted in *Bishop v. State*, Wyo., 687 P.2d 242, 246 (1984), cert. denied 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). See also *Coleman v. State*, supra at 104.

Relating the first two factors to this case, it is obvious that appellant was the aggressor in the Poor Roger's fight, and that that fight occurred less than an hour before Knezovich was punched. Ms. Korogi's eyewitness account shows these things plainly.

Under factors (3) through (5), we hold that Hawkins' and Korogi's testimony about appellant's participation in the fight in Poor Roger's was relevant to show appellant's intent and state of mind under Rule 404(b), W.R.E. In his opening statement at trial, appellant admitted punching Knezovich. In his presentation of evidence and closing argument, appellant essentially admitted he was a trained boxer. The pivotal question in the trial was whether he broke Knezovich's jaw " * * * intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life * * * " under § 6–2–502(a)(i) so that aggravated assault was proven beyond a reasonable doubt. The testimony of Hawkins and Korogi was relevant to show that appellant knew he could inflict severe injury upon another person's head with his fists, especially in

his emotional state on that evening. This evidence went directly to the requisite intent, knowledge or recklessness that must be shown in a trial for aggravated assault. It was relevant and more probative than prejudicial in that context.

■ Appellant also objected to a statement made by the victim during his testimony for the state. The statement was an offhand reference to a remote incident with little or no relevance in this trial. The challenged statement came out in direct examination as follows:

"Q. [State] Do you know the Defendant Danny Trujillo?"

"A. [Knezovich] Yes, I do.

" * * *

"Q. Do you know of any friction between the two of you?

"A. I know just when he had a run-in with Michael Cordova quite a few years back, we stopped and—

"MR. PICKETT: Your Honor, I'll object to this. I think it's inadmissible as a prior act, and I believe 404 would exclude it."

The witness never finished answering, so he never really said anything about bad acts. Knezovich's direct testimony then briefly explored other meetings between the two men before getting into a description of the July 17, 1986, assault. No motion to strike the answer which Knezovich had given is found in the record, and his testimony, as reflected, does not violate Rule 404(b), W.R.E.

Furthermore, under Rule 49(a), W.R.Cr. P. and Rule 7.04, Wyoming Rules of Appellate Procedure, we have held that:

" * * * For an error to be regarded as harmful [reversible] there must be a reasonable possibility that in the absence of the error, the verdict might have been more favorable to the defendant. [Citations.]" *Jones v. State*, Wyo., 735 P.2d 699, 703 (1987).

Knezovich's utterance is harmless error under this standard. Excluding it would not have changed the jury's verdict in light of all the other properly admitted testimony before them concerning appellant's intent and state of mind on the evening of the assault.

## II

■ When an appellant raises sufficiency of the evidence as an issue in a criminal case, we have stated:

> " * * * [I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. [Citations.]
>
> " * * *
>
> "It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence. [Citations.] * * *"

*Broom v. State*, Wyo., 695 P.2d 640, 642 (1985).

See also *Jozen v. State*, Wyo., 746 P.2d 1279, 1282 (1987). As we have already explained, the real question for the jury in this case was whether the assault was an aggravated one under § 6-2-502(a)(i).

Appellant argues that the only evidence available to the jury on this question was the fact that he punched Knezovich once in the jaw. That is not the case. The jury also heard properly admitted testimony about appellant's appearance and state of mind on the evening of July 17, 1986, from Officer Hawkins and Ms. Korogi. Appellant had already injured one man that evening by punching him in the head, and ignored a warning to go home after that from Officer Hawkins by going into Killpepper's only minutes later and punching Knezovich. Appellant also let the jury know he was a trained boxer. Considered together, this evidence was sufficient to form a basis for a conviction of aggravated assault.

Affirmed.